IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| **FEDERAL DEPOSIT INSURANCE CORPORATION,** as Receiver for Silverton Bank, National Association,<br><br>　　　Plaintiff,<br><br>v.<br><br>**WILLIAM ("LARRY") L. LEE**,<br><br>　　　Defendant. | Civil Action No. 7:12-CV-149 (HL) |

### ORDER

Before the Court is the Motion for Summary Judgment (Doc. 23) filed by Plaintiff Federal Deposit Insurance Corporation, as Receiver for Silverton Bank, N.A. (the "FDIC"). For the reasons stated below, the motion for summary judgment is granted.

**I.   Factual Background**

This case arises from the FDIC's attempt to collect a judgment on a promissory note executed by Defendant William "Larry" Lee ("Lee") that has subsequently gone into default. On or about September 25, 2007, Lee received a loan from The Bankers Bank, National Association ("Bankers"), and in return executed and delivered a promissory note to Bankers in the amount of $3,773,582.16 with an interest rate set by the terms of the note ("the Note").

(Promissory Note between Bankers and Lee, Plaintiff's Ex. 3 to Lee's Deposition, Doc. 33-2, p. 1). Payment on the Note was due by September 25, 2009. (Id.). Lee received and enjoyed the use of the loan money. (Lee's Deposition, Doc. 25-1, pp. 29-30). Effective January 1, 2008, Bankers changed its name to "Silverton Bank, National Association" ("Silverton"). (Declaration of David A. Ohlrich, Doc. 31-1, ¶4).[1]

On May 1, 2009, the Office of the Comptroller of the Currency in Washington, D.C., declared Silverton to be insolvent and appointed the FDIC as receiver for the bank. In becoming the receiver for Silverton, the FDIC acquired the Note executed by Lee and succeeded to all of the rights and obligations as the holder of the Note. (Id. at ¶5; Letter from Comptroller of the Currency to the FDIC, Doc. 23-8). After the FDIC assumed the right to enforce the Note, it entered a "First Loan Modification Agreement" ("Modification Agreement") with Lee on September 24, 2009, whereby the terms of the Note were modified to extend the deadline for repayment of the loan to March 25, 2011, and to increase

---

[1] The FDIC did not submit Ohlrich's sworn declaration until it filed its reply to Lee's response to the summary judgment motion. Although the FDIC certainly would have simplified matters had it submitted the declaration when it first moved for summary judgment, the Court finds the delay to have been *de minimis* and that it did not in any way prevent Lee from defending himself in this lawsuit. Although a number of options were available to Lee to challenge the veracity of Ohlrich's declaration or pursue discovery for the factual basis for Ohlrich's assertions, Lee has not sought to avail himself of any of them. See Lightsey v. Potter, 268 F. App'x 849, 852 (11th Cir. 2008).

the interest rate on the principal. (First Loan Modification Agreement, Plaintiff's Ex. 3 to Lee's Deposition, Doc. 33-2, p. 1-2; Doc. 25-1, pp. 41-44).

Lee ceased making payments on the loan in September 2010. (Doc. 25-1, p. 45). Therefore, exercising its right to do so in accordance with the terms of the Note, the FDIC accelerated the remaining amount due under the Note and demanded full payment from Lee in a letter from its legal counsel sent on July 27, 2012. The letter included a notice in compliance with O.C.G.A. § 13-1-11 that warned of the possible imposition of attorneys' fees. (Doc. 31-1, ¶7; Letter from Taylor English, Plaintiff's Ex. 4 to Lee's Deposition, Doc. 33-2; Doc. 25-1, pp. 49-51). To date Lee has not cured his default and remains in breach of the Note and loan agreement. (Id. at 49-51; Doc. 31-1, ¶7). With its motion for summary judgment, the FDIC now seeks a judgment against Lee to include not only the outstanding principal due under the Note, but also interest, late fees, miscellaneous charges, and attorneys' fees.

## II. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and…the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact arises

only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When considering a motion for summary judgment, the court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 254-55. The court may not, however, make credibility determinations or weigh the evidence. Id. at 255; *see also* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. This evidence must consist of more than conclusory allegations. *See* Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). In sum, summary

judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### III. Legal Analysis

Lee does not dispute that he signed the Note or that he has defaulted on paying it. However, he seeks to avoid summary judgment in FDIC's favor by arguing that genuine disputes of material fact remain on 1) whether the FDIC is the lawful holder of the Note and 2) what amount of money is owed on the Note. Because Lee is mistaken in his contentions, FDIC's motion for summary judgment is granted.

The FDIC has carried its burden by establishing a *prima facie* case that it is the lawful holder of the Note, and Lee has not pointed to any evidence in the record that would create a factual question on this issue. The FDIC has submitted the sworn declaration of David Ohlrich, who is a resolutions and receiverships specialist in the Division of Resolutions and Receiverships at the FDIC, that unambiguously states that the FDIC is the holder of the Note Lee executed in favor of Bankers in September 2007. As the declaration relates, Bankers changed its name to "Silverton Bank, National Association" in January 2008. Ohlrich's employment at the FDIC encompasses involvement in the FDIC's work as receiver for Silverton, including enforcement of the Note signed and

executed by Lee. The Note was among the assets the FDIC acquired from Silverton after the bank became insolvent and the FDIC was appointed as its receiver. (Doc. 31-3, ¶¶2-5). Lee has not contested the veracity of any of Ohlrich's declarations nor has he introduced any evidence that would conflict with them. Under Georgia law, Ohlrich's sworn declaration is sufficient to establish a *prima facie* case that the FDIC is the holder of the Note Lee executed. *See, e.g.*, First Citizens Bank & Trust Co., Inc. v. Hwy 81 Venture, LLC, No. 1:10-CV-02126, 2012 WL 779894, at *3 (N.D.Ga. March 6, 2012); Salahat v. F.D.I.C., 298 Ga. App. 624, 628, 680 S.E.2d 638 (2009).

There is other evidence to support Ohlrich's declaration that the FDIC is the lawful holder of the Note. The FDIC has introduced a copy of the letter from the Comptroller of the Currency appointing the FDIC as receiver for Silverton (Doc. 23-8), as well as a copy of the return letter from the FDIC accepting the appointment (Letter from the FDIC to the Comptroller of the Currency, Doc. 23-9). Furthermore, Lee testified during his deposition that he worked with the FDIC, as the receiver for Silverton, to modify the terms of the Note and postpone the date for repayment of the loan. He admitted that he owes money to the FDIC, as the receiver for Silverton, and that he has no reason to doubt that the FDIC is the holder of the Note. (Doc. 25-1, pp. 40-44, 52-53). The Modification Agreement itself contains the recital that "Federal Deposit Insurance Corporation was

appointed as Receiver for Silverton Bank, National Association on or about May 1, 2009 and has therefore become the 'Lender' under the Loan Documents." (First Loan Modification Agreement, Doc. 33-2, p. 1). In light of Lee's failure to point to any evidence contradicting the FDIC's *prima facie* case that it is the legal holder of the Note, the Court finds there is no genuine dispute concerning this material fact.

Lee has also failed to prove there is a genuine dispute over how much money the FDIC is entitled to receive under the Note. It is undisputed that Lee owes $3,773,582.16, the full amount of principal borrowed under the Note. (Promissory Note between Bankers and Lee, Doc. 33-2, p. 1; Doc. 25-1, pp. 28-30). Under the terms of the Note and then the Modification Agreement Lee reached with the FDIC, he was required to make monthly payments on the accrued interest on the principal, but he did not have to pay the principal until March 25, 2011. (Promissory Note between Bankers and Lee, Doc. 33-2, p. 1; First Loan Modification Agreement, Doc. 33-2, pp. 1-5; Doc. 25-1, pp. 43-44). Lee ceased making payments on the interest in September 2010, and he never repaid the loan principal. (Doc. 31-1, ¶¶7-8; Doc. 25-1, pp. 44-46, 50-51, 55, 77).

The FDIC has also provided sufficient evidence to make a *prima facie* case for the amount of money it is owed for unpaid interest, default interest, fees, and costs. To support its calculations of these monetary figures, the FDIC again

points to the sworn declaration of David Ohlrich, which the Court finds is sufficient to establish a *prima facie* case for the amount owed under the Note. *See* United States v. Parker, 749 F.2d 628, 633 (11th Cir. 1984); CertusBank, N.A. v. LAH, LLC, No. 3:12-CV-47, 2013 WL 4009667, at *3-4 (M.D.Ga. Aug. 5, 2013); Hwy 81 Venture, 2012 WL 779894 at *5-6. Failing to provide any evidence to conflict with the FDIC's evidence and contenting himself with assertions that the FDIC has not adequately stated how it calculated the amount owed on the Note, Lee does not convince the Court that there is a genuine factual dispute on this issue. Accordingly, the Court finds that, as of August 31, 2012, Lee owes the FDIC $3,773,582.16 in principal; $249,347.32 in accrued and unpaid default interest; $600.00 in unpaid late charges; and $600.00 in other fees. Because interest continues to accrue at a per diem rate of $872.4594, Lee also owes $444,081.83, that is, the per diem rate multiplied by the number of days from Lee's default on August 31, 2012 until the date of this Order, January 22, 2014. Thus, the total amount owed by Lee for the principal, interest, and fees comes to $4,468,211.31.

The FDIC has also moved for an award of attorneys' fees and court costs, and since Lee does not dispute the FDIC's right to such fees, the Court grants the motion. Where a promissory note authorizes the payment of attorneys' fees for any collection of debt on the note, Georgia law directs a court to award

attorneys' fees according to the calculations stated in the note so long as the fees do not exceed 15% of the unpaid principal and interest. O.C.G.A. § 13-1-11(a)(1) (2010). To receive attorneys' fees, the holder of the note must demonstrate to the court that notice was provided to the debtor that payment of attorneys' fees could be avoided by paying off the full amount due under the note within ten days of receiving notice. See TermNet Merchant Servs., Inc. v. Phillips, 277 Ga. 342, 344, 588 S.E.2d 745 (2003); O.C.G.A. § 13-1-11(a)(3). There is no question that, by the express terms of the promissory note he executed, Lee agreed to pay "court costs and fifteen percent (15%) of the principal plus accrued interest as attorneys' fees." (Promissory Note between Bankers and Lee, Doc. 33-2, p. 2). Nor is there any doubt that the letter from the FDIC's attorneys dated July 27, 2012 provided sufficient notice to Lee under O.C.G.A. § 13-1-11. (Letter from Taylor English, Plaintiff's Ex. 4 to Lee's Deposition, Doc. 33-2; Doc. 25-1, pp. 49-51). Therefore, this Court finds that the FDIC is entitled to 15% of the unpaid principal and interest on the Note, and it awards the FDIC $670,051.70 as attorneys' fees.[2]

---

[2] The Court included in its calculation the per diem rate of interest accruing since August 31, 2012, but excluded the $600.00 in unpaid late charges as well as the $600.00 in fees, since the terms of the Note did not authorize attorneys' fees to be charged on such costs.

## IV. Conclusion

For these reasons, FDIC's motion for summary judgment is granted. The Clerk shall enter judgment in favor of Plaintiff Federal Deposit Insurance Corporation and against Defendant Lee in the amount of $5,138,263.01.


**SO ORDERED**, this the 22nd day of January, 2014.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

scr